UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trovare Capital Group, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No.:  08 cv 3133 |
| | : | |
| v. | : | Judge Gettleman |
| | : | Magistrate Judge Nolan |
| Simkins Industries, Inc., | : | |
| Harvard Folding Box Co., Inc., | : | |
| Linden-Summer Realty Co., Inc. and | : | |
| Southern Union Company, Inc., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

**PRELIMINARY STATEMENT**

The defendants,[1] by their counsel, submit this memorandum in support of their

motion under Fed. R. Civ. P. 12(b)(6) to have the complaint dismissed for failure to state

a claim upon which relief can be granted.  The complaint purports to plead causes of

action for breach of a contract -- specifically, a "letter of intent" (the "LOI") -- that set

forth certain terms on which the plaintiff, as the buyer, proposed to purchase from the

defendants certain assets used in their folding carton business.  The plaintiff's claims are

based on one or another of two provisions in the LOI that, under certain specified

conditions, would have obligated the defendants to make payments to the plaintiff in the

event that the sale transaction was not consummated.  The complaint fails to allege,

---

[1]    The four defendants named in the complaint, and on behalf of which the motion
to dismiss is filed, are Simkins Industries, Inc., Harvard Folding Box Co., Inc.,
Linden-Summer Realty Co., Inc. and Southern Union Company, Inc.  They are
affiliated companies and are referred to collectively herein as the "defendants."

however, that those conditions were met, and also asserts that the seller/defendants

"breached" a supposed contractual obligation that is not imposed by the terms of the

contract.  Accordingly, the complaint fails adequately to allege that the buyer/plaintiff is

entitled to any relief under the contract, and, therefore, the motion to dismiss should be

granted.

## FACTUAL BACKGROUND[2]

## The Parties and the LOI

The plaintiff, Trovare Capital Group, LLC ("Trovare"), is an Illinois limited

liability company.  Complaint ¶1.  On May 23, 2007, Trovare or a predecessor[3] entered

into a letter of intent with the defendants regarding the proposed sale and purchase of "all

the [defendants'] operating assets," as those assets were further described and defined in

the LOI.  Complaint ¶¶ 8, 10, and Exhibit A thereto, Section 1.[4]  The LOI described

various terms and conditions on which the proposed asset sale would occur, including,

---

[2]     The facts described herein are taken from the complaint and, as is appropriate on
a motion under Rule 12 (b)(6), are assumed to be true for purposes of the motion.
See Killingsworth v. HSBC Bank, 507 F.3d 614, 618 (7th Cir. 2007).  The
defendants reserve their right to controvert or contest the allegations in the
complaint should it become necessary to do so.

[3]     It appears that Trovare Capital Group LLC, the actual entity that is the plaintiff
herein, did not come into existence until well after the execution of the LOI on
May 23, 2007.  The LOI was entered into by something or someone -- quite
possibly Randy Cecola, who signed the LOI for the "Buyer" -- operating under
the name "Trovare Capital Group," on behalf of "an entity to be formed" by
Trovare Capital Group.  Apparently, Trovare, the plaintiff herein, is the "entity to
be formed."  For purposes of this motion the defendants do not dispute that
Trovare stands in the shoes of Trovare Capital Group regarding its rights and
obligations under the letter of intent.

[4]     A copy of the LOI is attached as Exhibit A to the complaint, and is to be
considered as part of the complaint for purposes of this Rule 12(b)(6) motion.
See McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006).

among other things the proposed sale price (Section 3), various adjustments that might be made to the price (Sections 4, 5), and certain conditions to the completion of the sale transaction (Section 9). Three sections of the LOI are of particular relevance here.

First, Section 8 of the LOI set forth certain provisions relating to the time within which consummation of the purchase transaction must occur and establishing the "Termination Date" of the LOI in the event a purchase transaction was not consummated within that specified time frame:

> Closing. If [Trovare] chooses to consummate the transaction contemplated by this letter, [Trovare] and Seller will consummate the transaction on or before September 30, 2007 unless it is mutually agreed to extend the closing. September 30, 2007 will be deemed the termination date ("Termination Date"), provided [Trovare] can terminate this letter at any time if not satisfied in its sole discretion with any of the due diligence.[5] If [Trovare] at any time does not choose to go forward with or consummate the transaction contemplated by this letter [Trovare] shall provide written notice of same to seller.

Trovare's complaint alleges, at least by way of necessary inference, that no sale transaction was consummated by September 30, 2007. See Complaint ¶¶ 16-18. There is no allegation, either, that Trovare and the defendants ever "mutually agreed to extend the closing" beyond September 30. From all that is alleged in the complaint, therefore, it appears that the parties' course of negotiations under the LOI terminated automatically on September 30, 2007, in accordance with the express language of Section 8.

Second, Section 13 of the LOI, headed "Exclusive Dealing," provided for a 90-day "Exclusivity Period" to run from the date on which the LOI was executed. The execution date was May 23, 2007 [Complaint ¶10; Exh. A, page 6], and thus the

---

[5]   Section 6 of the LOI acknowledged explicitly that, before becoming "obligated to proceed," Trovare "must conduct a thorough due diligence."

Exclusivity Period extended from that date until August 21, 2007.  In addition, Section 13

imposed on the defendants certain prohibitions against "shopping" the assets that were

the subject of the LOI:

> Exclusive Dealing . . . [F]or the 90-day period beginning
> with the date of execution of this letter, Seller [i.e., the
> defendants] . . . will not . . . , directly or indirectly, initiate,
> solicit, offer, encourage, participate in any discussions or
> negotiations with, or provide any information to, any
> person or entity, other than [Trovare] . . . , concerning any
> proposal or agreement with respect to any direct or indirect
> acquisition of all or any substantial portion of the assets of
> the [defendants'] Business (except for dispositions of assets
> of the Business in the ordinary course of business) . . . .
> During such period ("Exclusively Period"), [defendants]
> hereby agree[] that [Trovare] shall have the exclusive right
> to enter into an agreement with respect to the direct or
> indirect acquisition of the Business . . . .  Failure to execute
> an asset purchase agreement by the end of the Exclusivity
> Period, though the Exclusivity Period can be extended upon
> mutual written agreement.  [emphasis added]

The complaint contains no allegation that the defendants breached Section 13 by

committing any of the prohibited acts during the 90-day Exclusivity Period that ended on

August 21, 2007.

Third, Section 14 of the LOI, headed "Break-up fee," contained two separate

provisions for the payment of fees or penalties to Trovare under certain specified

conditions.  The first subparagraph of Section 14 thus provided that the defendants would

become obligated to pay Trovare a "breakup fee" of $200,000 if (a) the defendants or any

of their shareholders "breached [Section] 13" of the LOI, or (b) the defendants

"provide[d] to [Trovare] written notice that negotiations toward a definitive asset

purchase agreement are terminated."  The second subparagraph of Section 14 provided

that

> [i]f within six months after the date of such breach [of Section 13] or the Termination Date [i.e., September 30, 2007, per Section 8], as the case may be, . . . the [defendants] consummate[] a transaction relating to the acquisition of . . . the Seller [i.e., the defendants] or its capital stock, assets or business, in whole or in part . . . <u>with a buyer that expressed interest in Seller during the Exclusivity Period</u> . . . the Seller will pay to [Trovare] a sum equal to two percent (2.0%) of the purchase price . . . less any breakup fees previously paid to [Trovare] . . . .

[emphasis added].

The complaint contains no allegation that the defendants breached Section 13 by soliciting, negotiating or discussing an acquisition with anyone other than Trovare during the Exclusivity Period; no allegation that the defendants -- the "Seller" -- provided Trovare, before or after the Termination Date established under Section 8, with any "written notice that negotiations toward a definitive asset purchase agreement are terminated;" and no allegation that any of the defendants ever "consummated a transaction" of any kind with any person "that expressed interest in Seller during the Exclusivity Period" that ended on August 22, 2007. Nor is there any allegation that anything in the LOI <u>required</u> the defendants to provide "written notice" that negotiations were at an end, or to confirm, in writing or otherwise, that the September 30, 2007 Termination Date had come and gone.[6]

---

[6]    As discussed further below, any such allegation would be doubly anomalous. Not only did the LOI not include any requirement that the defendants provide written notice of termination, but, as discussed above, Section 8 provided <u>expressly</u> for automatic termination, and for an agreed "Termination Date" of September 30, 2007, if the sale of assets had not been consummated by then.

### Trovare's Complaint

The complaint is cast in three counts. Count I, headed "Breach of Contract," alleges in pertinent part (a) that the defendants' "refusal" to provide Trovare with "written notice of termination constitutes bad faith dealing;" and (b) that the defendants "breached" the LOI because they "refused to pay the breakup fee" provided for in Section 14. Complaint, ¶¶ 27, 28. Trovare seeks under Count I to recover the full $200,000 breakup fee. As noted above, however, Count I does not allege any facts to suggest that either of the conditions to an obligation to pay the breakup fee were met: no facts are alleged that show a violation of the "Exclusivity Period" provisions of Section 13, or that the defendants ever provided "written notice" that they were terminating negotiations.[7]

Count II of Trovare's complaint, headed "Breach of Contract (In the Alternative)," alleges in pertinent part and "upon information and belief" that "the assets of the [defendants] have been transferred" to a third party "in violation of [Section] 13 of the LOI," and that such transfer constituted a breach of that Section. Complaint ¶¶ 34, 35. Count II seeks damages equal to two percent of the proposed purchase price, in accordance with the formula provided in Section 14. As discussed above, however, Count II does not allege that, as Section 13 requires for there to have been any breach, any of the defendants' assets were transferred to "a buyer that expressed interest in Seller during the Exclusivity Period" that ended on August 20, 2007.

Finally, Count III of the complaint purports to seek a declaratory judgment to the effect that the breach of contract claims pleaded in Counts I and II are valid.

---

[7]    It should also be noted in passing that he complaint never explicitly alleges that negotiations did in fact terminate, and certainly does not allege that they somehow terminated before the automatic Termination Date of September 30, 2007.

## ARGUMENT

### I.    Governing Legal Standards.

The standards to be applied in resolving a motion to dismiss under Rule 12(b)(6) are settled.  Such a motion merely tests the legal sufficiency of the complaint, and the Court must assume the truth of all of the plaintiff's "well-pleaded" allegations, and must construe those allegations, as well as all reasonable inferences arising from them, in the light most favorable to the plaintiff.  See Killingsworth, 507 F.3d at 618; Palda v. General Dynamics Corp., 47 F.3d 872, 874 (7th Cir. 1995).  The complaint must, however, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"  Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008).  In this connection, "bare legal conclusions" asserted in the complaint should be disregarded. Stansberry v. Uhlich Children's Home, 264, F.Supp. 2d 681, 685 (N.D. Ill. 2003). Accordingly, the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [as required by Fed. R. Civ. P. 8] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

These same standards, of course, apply on a motion to dismiss a complaint asserting breach of contract claims.  See Palda, 47 F.3d at 874-75.  To avoid dismissal in such a case, a complaint generally must show the plaintiff's entitlement to relief by reference to "the language of the agreement itself."  Id. at 874.  Thus where the complaint fails to plead facts showing that the conditions that entitled the plaintiff to a benefit under the contract were met, dismissal is appropriate.  Id. at 875.

**II.     The Complaint Does Not Allege Entitlement to Relief for Breach of the LOI.**

    **A.     Count I.**

As discussed above, Count I of Trovare's complaint seeks to recover the "breakup" fee of $200,000 payable under the first subparagraph of Section 14 of the LOI. Under the explicit language of that Section, such a fee was payable <u>only</u> in the event that (a) there was a breach of the "exclusivity" provisions of Section 13, or (b) the defendants "provide[d] to [Trovare] a written notice that negotiations toward a definitive asset purchase agreement [were] terminated." Exh. A to Complaint, Section 14. The complaint, however, does not allege any facts showing that either of these conditions to the breakup fee obligation ever occurred.

First, there are no factual allegations in the complaint that assert or even imply that any defendant committed any breach of any of the exclusivity obligations imposed by Section 13. There is absolutely no allegation, for example, that any defendant ever took any steps, during the 90-day Exclusivity Period that ended on August 20, 2007, to "initiate, solicit, offer, encourage, participate in any discussions or negotiations with, or provide any information to, any person . . . other than [Trovare] . . . concerning any proposal" regarding any of the assets that were the subject of the LOI. Similarly, there is absolutely no allegation that Trovare's "exclusive right" to enter into a purchase agreement with the defendants during the 90-day Exclusivity Period was infringed, or that the defendants received any feelers or inquiries during that period but failed to notify Trovare. Given the absence of any such allegations, it cannot be disputed that the complaint does not allege any facts to show that the first of the two conditions that might have triggered an entitlement to a breakup fee -- a breach of Section 13 -- was met.

The same is true with respect to the second triggering condition, that is, the defendants' provision of a written notice to Trovare announcing that negotiations were terminated. This condition was certainly never fulfilled; indeed, the complaint alleges explicitly that no such notice was ever given. See Complaint ¶19.[8] In this respect, too, the complaint simply fails to allege any facts that might show Trovare's entitlement to a breakup fee under Section 13, and therefore Count I must be dismissed.

**B.      Count II.**

The gravamen of the "alternative" breach of contract claim asserted in Count II of the complaint is that the defendants breached the "Exclusivity Period" provisions of Section 13 by transferring assets "to a party other than [Trovare]" in violation of that Section, and thus that the defendants are liable to pay the two percent penalty provided in the second subparagraph of Section 14. Complaint, ¶¶ 34, 35, 37. Again, there are no factual allegations to support the claim.

First, the complaint is utterly devoid of any allegation that the defendants did anything during the 90-day Exclusivity Period that extended from May 23 to August 21, 2007, much less that the defendants transferred any assets to anyone during that period. In fact, the complaint alleges, quite explicitly, that the supposedly illicit transfer of assets occurred "on or around January 18, 2008," or some five months after the 90-day Exclusivity Period had ended. Complaint, ¶ 16. There is, therefore, no allegation at all of any facts which, if true, would establish a violation of Section 13.

---

[8]      The complaint does suggest that the LOI should be interpreted to have imposed on the defendants some requirement that they give written notice. See Complaint ¶19. Nothing in the actual language of the LOI imposes any such requirement. In fact, the presence in Section 8 of an automatic Termination Date provision indicates that the LOI contemplated that no notice of termination was necessary.

In addition, there is no allegation in the complaint that even if true, would establish a right to payment of the two percent penalty provided in the second subparagraph of Section 14 by reason of any sale to a third party. Section 14 predicates payment of the penalty amount <u>solely</u> upon the defendants having "consummate[ed] a transaction" with a third party "that expressed interest in the Seller during the Exclusivity Period," that is, the 90-day period that ended on August 21, 2007. The complaint does not allege that the purported buyer, one David Simkins, who is alleged to have purchased assets from the defendants on January 18, 2008, "expressed interest" in any such purchase "during the Exclusivity Period," as required by the explicit terms of Section 14.[9] Once again, the complaint simply fails to allege facts necessary to show that Trovare has any entitlement to a recovery under the LOI at all, and Count II should be dismissed as well.

### C.    Count III.

Count III, the declaratory judgment count, merely rehashes the claims asserted in Counts I and II, and is facially deficient for the same reasons as those two counts. Thus, Count III should be dismissed as well.

---

[9]    Although not strictly pertinent to the decision of this motion, the Court should be aware that in fact there was no such transfer of the defendants' assets at any time, to Mr. Simkins or to anyone else.

## CONCLUSION

As the foregoing makes clear, Trovare has failed to plead facts that, even were

they true, would show any right or entitlement under "the language of the agreement" in

question. Palda, 47 F.3d at 874. The defendants respectfully submit, therefore, that their

motion to dismiss all three counts of the complaint must be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

 /s/ Thomas W. Mulcahy
Thomas W. Mulcahy
Atty No. 6272757
CRISHAM & KUBES, LTD.
30 North LaSalle Street
Suite 2800
Chicago, IL  60602
(312) 327-2500
(312) 327-2450 (facsimile)
tmulcahy@crishamlaw.com

- and -

Timothy C. Russell
Peter N. Kessler
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888
(215) 241-8844 (facsimile)

Counsel for Defendants Simkins Industries,
Inc., Harvard Folding Box Co., Inc., Linden-
Summer Realty Co., Inc. and Southern
Union Company, Inc.

</div>

Dated: August 1, 2008